**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Dayton Bar Assn. v. Swift,* **Slip Opinion No. 2014-Ohio-4835.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4835

DAYTON BAR ASSOCIATION *v.* SWIFT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dayton Bar Assn. v. Swift,* Slip Opinion No. 2014-Ohio-4835.]**

*Attorneys—Misconduct—Overbilling for services as court-appointed attorney for indigent persons—Indefinite suspension with full restitution required before petitioning for reinstatement.*

(No. 2013-1987—Submitted February 5, 2014—Decided November 6, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-014.

_____

**Per Curiam**.

{¶ 1} Respondent, Ben Musa Swift of Dayton, Ohio, Attorney Registration No. 0065745, was admitted to the practice of law in Ohio in 1995.

{¶ 2} On March 8, 2013, a probable-cause panel of the Board of Commissioners on Grievances and Discipline certified a complaint against Swift to the board. In that complaint, relator, Dayton Bar Association, charged Swift with violating six Rules of Professional Conduct based on a pattern of overbilling

for work he performed as a court-appointed attorney in the juvenile and general courts of four separate counties.

{¶ 3} At the hearing, the panel heard testimony from Swift, Ohio Public Defender Timothy Young, Judge Anthony Capizzi of the Montgomery County Juvenile Court, and Swift's wife. The parties also submitted joint stipulations of fact and stipulated exhibits, including voluminous billing records for court-appointed work that Swift had performed in Montgomery, Warren, Clark, and Greene Counties, and a 465-page spreadsheet summarizing those documents. The panel also received the parties' stipulations regarding the appropriate sanction and a plan for restitution that required Swift to provide $50,000 worth of services as a court-appointed attorney over a two-and-a-half-year period and to make up any shortfall in cash.

{¶ 4} The panel adopted the parties' stipulations of fact and agreed that Swift violated the Rules of Professional Conduct by knowingly making false statements of material fact to a third person, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and engaging in conduct that was not only prejudicial to the administration of justice, but also adversely reflected on his fitness to practice law. The panel also found that by submitting his inflated bills to the courts in four counties, Swift knowingly made false statements of fact to a tribunal, but recommended that we dismiss another alleged violation based on the insufficiency of the evidence. On these findings of misconduct, the panel recommended that we suspend Swift's license to practice law for two years, with the second year stayed on the conditions that he submit to a one-year period of monitored probation focusing on his law-office management, that he commit no further ethical violations, and that he make full restitution of $50,000, to be divided in designated percentages between the state and the affected counties. The board adopted the panel's findings of fact and all but one of its conclusions of law and also adopted the panel's recommended sanction.

**{¶ 5}** We adopt the board's findings of fact and, like the panel, find that relator has proven all but one of the alleged violations by clear and convincing evidence. We further agree that a two-year suspension with the second year stayed on conditions is the appropriate sanction for Swift's misconduct.

## Misconduct

**{¶ 6}** Relator initiated its investigation into Swift's billing practices for his court-appointed legal work following a March 7, 2010 Dayton Daily News article that identified him as the attorney receiving the highest payment for court-appointed legal work in Ohio.

**{¶ 7}** As a court-appointed lawyer in the Montgomery County Court of Common Pleas, Juvenile Division, Swift was paid for work he performed on behalf of his clients at the rate of $50 per hour for his work in court, and $40 per hour for his work out of court. In submitting bills for his court-appointed work, Swift used a form promulgated by the Ohio Public Defender's Office that is made available to attorneys throughout the state both online and as a hard copy. *See* http://www.opd.ohio.gov/Reimbursement/rm_1026r.pdf (accessed Oct. 27, 2014). The form requires the attorney to provide certain information regarding the case, such as the date and time of the services provided, and to identify whether the services were performed in or out of court.

**{¶ 8}** The attorney seeking payment of his or her fees then submits the completed form to the trial court for approval by the judge. If the judge approves, he or she signs the form, approving counsel fees and certifying the amount to the county auditor for payment. The county auditor then issues a warrant for payment to the lawyer. The bills are then submitted to the Ohio Public Defender for reimbursement of a percentage of the appointed counsel fees that is funded by the General Assembly and the Indigent Defense Support Fund. *See* R.C. 120.08 (creating the fund and establishing guidelines for its use); R.C. 120.33 (establishing the procedure for payment of court-appointed counsel). The courts

and the public defender's offices must rely upon the trustworthiness and integrity of the attorneys who seek payment to provide accurate information regarding their time and billing.

{¶ 9} The parties stipulated that an audit of the forms that Swift submitted to seek payment for court-appointed work revealed that his billing hours were extraordinarily high—including billings of at least 14 hours and up to 30 hours per day on numerous occasions between September 28, 2007, and July 27, 2009.

{¶ 10} In 2007, Swift billed 479.5 hours for work that he certified he had performed as a court-appointed attorney in the juvenile and general division courts of Montgomery County and received payment of $20,505. But when that work was combined with his claimed work in Clark, Greene, and Warren Counties, his billable hours jumped to 694 hours, and his combined earnings were $32,330.

{¶ 11} In 2008, Swift billed 2,555.5 hours for work he certified that he had in fact performed as a court-appointed attorney in Montgomery County courts, resulting in billings of $110,040. For his work in the courts of the four affected counties, Swift billed a total of 2,967 hours and had combined earnings of $131,890. He averaged 213 court-appointed billing hours per month in Montgomery County courts that year, with a one-month high of 274 billable hours in that county in February 2008. When his work in all four counties is considered, he logged a total of 323.5 billable hours as a court-appointed attorney in February 2008.

{¶ 12} Swift averaged seven billable hours of court-appointed work per day for 365 days in 2008 in Montgomery County alone. If his court-appointed services for all four counties are considered, his daily average jumps to 8.12 hours per day for 365 days.

**{¶ 13}** In 2009, Swift certified that he had performed 1,580.5 hours of court-appointed work in the juvenile and general divisions of Montgomery County, earning $69,555. But when all four affected counties are considered, he billed 1,883 hours for court-appointed work, earning a total of $86,105.

**{¶ 14}** Swift failed to maintain independent time records for himself or for the other attorneys whom he allegedly supervised. He also failed to adhere to the Ohio Public Defender Standards and Guidelines for Appointed Counsel Reimbursement by routinely billing for his work in increments of one-half hour instead of one tenth of an hour as required by Section I(F)(1) of those standards.[1] He has failed to provide any documentation in support of the hours he has billed for court-appointed services, and he acknowledges that he kept no records or other evidence to support his billings. Swift recognized that as an attorney licensed to practice in the state of Ohio, he had a responsibility to submit accurate information to the courts in which he practiced. He acknowledged that he failed in this responsibility and that his wrongful conduct undermined public confidence in the system.

**{¶ 15}** On this evidence, the panel found that relator had proven that Swift violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal); 4.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact or law to a third person); 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice); and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). But based on the insufficiency of the evidence, the panel

---

[1] Section I(F)(1) plainly states, "The itemization of hours spent in-court and out-of-court by the attorney is required on Every Motion, Entry, and Certification form submitted. *Hours must be itemized on all forms in tenth of an hour (6 minute) increments.*" (Emphasis sic.)

recommended the dismissal of an alleged violation of Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness).

{¶ 16} The board adopted the panel's findings of fact and misconduct, except that it recommended that we dismiss the alleged violation of Prof.Cond.R. 8.4(h), concluding that Swift's conduct was not sufficiently egregious to merit an additional finding that his conduct adversely reflected on his fitness to practice law. *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21 (requiring clear and convincing evidence that a lawyer has engaged in misconduct that adversely reflects on the lawyer's fitness to practice law, even though that conduct is not specifically prohibited by the rules, *or* proof that the conduct giving rise to a specific rule violation is so egregious as to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law to support a violation of Prof.Cond.R. 8.4(h)).

{¶ 17} We adopt the board's findings of fact and misconduct and dismiss the alleged violation of Prof.Cond.R. 8.4(b). But we also find that Swift's failure to maintain any contemporaneous records of the time he spent representing indigent clients as court-appointed counsel and his corresponding propensity to guess at the amount of time he spent working on hundreds of cases adversely reflect upon his fitness to practice law, even though they are not expressly prohibited by the Rules of Professional Conduct. Moreover, the sheer volume of Swift's false statements to the affected courts, the complete absence of any documentation to assist this court in determining the full extent of his overbilling in these matters, and Swift's stipulation that restitution of $50,000 is warranted render his violation of Prof.Cond.R. 3.3(a)(1) and 8.4(c) sufficiently egregious to warrant an additional finding that his conduct adversely reflects on his fitness to practice law in violation of Prof.Cond.R. 8.4(h).

**Sanction**

{¶ 18} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).

{¶ 19} The board found that four of the nine aggravating factors enumerated in BCGD Proc.Reg. 10(B)(1) are present here: (1) Swift acted with a dishonest or selfish motive, (2) he engaged in a pattern of misconduct, (3) he engaged in multiple offenses, and (4) he failed to make restitution. See BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (i). And as mitigating factors, the board found that Swift does not have a prior disciplinary record, that he made full and free disclosure to the board and demonstrated a cooperative attitude toward the disciplinary proceedings, and that he presented evidence of his good character apart from the charged misconduct as demonstrated by the affidavits of four judges, submitted pursuant to subpoena.

{¶ 20} The parties stipulated that Swift's conduct warranted a suspension of up to two years, but did not agree whether any part should be stayed. They further stipulated that Swift would repay $50,000 to the state of Ohio by providing legal services as appointed counsel without charge. In the event that he failed to provide $50,000 within two and a half years, the parties stipulated that he would repay the remaining balance in cash, to be distributed to the state and the affected counties in the following percentages: (1) state of Ohio, 40 percent, (2) Montgomery County, 43.8 percent, (3) Greene County, 5.4 percent, (4) Clark County, .6 percent, and (5) Warren County, 10.2 percent.

{¶ 21} Comparing the facts of this case to those of *Toledo Bar Assn. v. Stahlbush*, 126 Ohio St.3d 366, 2010-Ohio-3823, 933 N.E.2d 1091, the board

recommended that we impose the corresponding sanction of a two-year suspension with one year stayed on the following conditions: (1) Swift must submit to one year of monitored probation in the area of law-office management, (2) he must commit no further misconduct, and (3) he must make full restitution in the stipulated amount of $50,000 to be allocated to the state and the affected counties pursuant to the parties' stipulations. The board, however, rejected the parties' stipulation that Swift be permitted to repay any part of that amount by providing court-appointed services without charge. Neither party has objected to the board's report.

{¶ 22} Stahlbush overbilled for court-appointed work. In early 2007, she billed the juvenile division of the Lucas County Court of Common Pleas for more than 24 hours per day on at least three occasions and more than 20 hours per day on five other occasions in 2006. *Stahlbush* at ¶ 2. Many other times, she billed the court for work in excess of 14 and up to 19 hours per day. *Id.* She stipulated that she had billed the county for 3,451.4 hours for court-appointed services in 2006—an average of 9.46 hours for every day of the year. *Id.* at ¶ 3. And like Swift, she acted with a dishonest or selfish motive and engaged in a pattern of misconduct involving multiple offenses, but had no prior disciplinary offenses and presented evidence of her good character and reputation in the legal community apart from the charged misconduct. We agree that Swift's misconduct is strikingly similar to that of Stahlbush, and therefore we find that the board's recommended sanction of a two-year suspension with the second year stayed on conditions—comparable to the sanction we imposed in *Stahlbush*—is the appropriate sanction for Swift's misconduct.

{¶ 23} Accordingly, Ben Musa Swift is suspended from the practice of law in Ohio for two years, with the second year stayed on the conditions that he submit to a one-year period of monitored probation focusing on law-office management and engage in no further misconduct. Further, before applying for

reinstatement, Swift must make full restitution of $50,000 to be distributed as follows: (1) the state of Ohio, $20,000 (40 percent), (2) Montgomery County, $21,900 (43.8 percent), (3) Greene County, $2,700 (5.4 percent), (4) Clark County, $300 (0.6 percent), and (5) Warren County, $5,100 (10.2 percent). Costs are taxed to Swift.

Judgment accordingly.

PFEIFER, O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

O'CONNOR, C.J., and LANZINGER and O'NEILL, JJ., dissent and would impose an indefinite suspension.

_____

Mark Robert Chilson, for relator.

Gary James Leppla, for respondent.

_____