**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. McCloskey*, Slip Opinion No. 2023-Ohio-3447.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3447

DISCIPLINARY COUNSEL *v*. MCCLOSKEY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. McCloskey*, Slip Opinion No. 2023-Ohio-3447.]**

*Attorneys—Misconduct—Violation of the Rules of Professional Conduct—Conditionally stayed one-year suspension.*

(No. 2023-0475—Submitted May 2, 2023—Decided September 28, 2023.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-038.

_____

**Per Curiam.**

{¶ 1} Respondent, Hugh Peter McCloskey Jr., of Cincinnati, Ohio, Attorney Registration No. 0072872, was admitted to the practice of law in Ohio in 2000.

{¶ 2} In an August 2022 complaint, relator, disciplinary counsel, alleged that McCloskey engaged in dishonest conduct by submitting grossly inaccurate fee applications for legal services as court-appointed counsel in the Hamilton County

Court of Common Pleas and Hamilton County Municipal Court. McCloskey waived a probable-cause determination. The parties submitted stipulations of fact and misconduct, including 47 exhibits, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Based on the parties' stipulations and McCloskey's testimony, the panel found that McCloskey committed the charged misconduct and recommended that he be suspended from the practice of law for one year, stayed in its entirety. The board adopted the panel's report and recommendation, and the parties have jointly waived objections. After a thorough review of the record, we adopt the board's findings of misconduct and the recommended sanction.

## MISCONDUCT

{¶ 3} McCloskey is a sole practitioner who works from a home office without any employees. Since 2015, his practice has consisted primarily of court-appointed representation of indigent clients in a wide variety of criminal and quasicriminal matters ranging from juvenile delinquency to aggravated murder.

{¶ 4} According to McCloskey, his daily schedule was at times chaotic and subject to change as events unfolded. He could represent seven or more clients in court in a single day. In addition to his assigned cases, he would occasionally receive last-minute requests from judges to stand in for lawyers who had failed to appear. He testified that the advent of electronic discovery and law-enforcement body cameras had increased the volume of discovery and the time required to review it.

{¶ 5} The parties stipulated that McCloskey had routinely worked between 10 and 12 hours per weekday and an additional six hours per weekend. Prior to 2022, he had not taken a vacation in at least six years.

{¶ 6} McCloskey was compensated at a rate of $50 or $60 an hour for court-appointed work, depending on the nature of the case and regardless of whether his time was spent in or out of court. In each case, he submitted to the court that had

appointed him a standardized fee-application form created by the Ohio Public Defender Commission.

{¶ 7} The Office of the Ohio Public Defender ("OPD") publishes the maximum allowable fee or "cap rate" for court-appointed counsel in criminal cases—an amount that varies depending on the nature of the case and the county in which it is filed. To receive compensation in excess of the cap rate, an attorney must file a separate motion requesting the additional fees. Although McCloskey testified that his hours exceeded the cap in "[q]uite a few" cases, he very rarely requested additional fees. He told the panel, "I don't govern myself by the cap. I'm going to do whatever I have to do to get a good result for my client. If I have to eat hours, I have to eat hours. That's—that's the nature of the job and that's what I understood when I accepted it."

{¶ 8} The fee-application form required McCloskey to itemize his fees and expenses for each case and to certify to the appointing judge, among other things, that he had "performed all legal services itemized in th[e] motion." On each form, McCloskey would list the dates he had provided legal services and the in-court or out-of-court hours that he had spent on the case beneath a statement that read, "I hereby certify that the following time was expended in representation of the defendant/party represented."

{¶ 9} Prior to October 2021, McCloskey did not utilize a time-management system or create and maintain any contemporaneous records of the time he had spent on any given case. Instead, he would make notations on the jacket of each client file memorializing what he had done and the date of the task; he would also try to record the time spent on each particular task, though he sometimes failed to do so.

{¶ 10} When McCloskey prepared his fee applications, he would attempt to "re-create" the time he had spent on each case by reviewing the case docket and the rough notes that he had made in the file. He would also estimate the date each task

was performed. For example, if a body-camera video was at issue in a case, he would determine the hearing date based on the docket and would estimate the time that he believed he would have spent reviewing the video sometime in the week before the client's hearing. During his testimony before the panel, he acknowledged that his notes were often incomplete and that he had done "a terrible job" of contemporaneously recording time as he performed work. As a result, the dates and hours he had recorded on his fee applications and had certified as "accurate" were often grossly inaccurate.

{¶ 11} In early 2021, OPD conducted an audit of the fee applications submitted on or after January 1, 2019, by several Hamilton County attorneys who were receiving a large amount of fees for court-appointed work. The audit revealed that McCloskey had submitted fee-application forms that together certified he had worked more than 24 hours in a day on three dates, that he had worked between 20 and 24 hours in a day on 13 dates, and that he had worked between 16 and 20 hours in a day on 22 dates. The parties submitted a chart summarizing the hours he had billed for those 38 days, along with the underlying billing records.

{¶ 12} The audit exposed other billing discrepancies. For example, although the Hamilton County courts are open to the public for eight hours a day, in 20 fee applications containing entries for August 7, 2019, McCloskey certified that he had worked an aggregate of 27 hours and had spent 14.1 hours in court in Hamilton County on that date. Similarly, in McCloskey's fee applications containing entries for September 23 and 26, 2019, he certified that he had spent more than 12 hours in court in Hamilton County on behalf of his clients each day.

{¶ 13} On multiple occasions, McCloskey certified that he had spent the same amount of time in court for each of several clients, regardless of the nature of the charges against the clients, any overlap in court appearances, or the amount of time that he was actually in court. He typically did this by billing a standard half-hour of in-court time for each case. For example, McCloskey submitted fee

applications for work he had performed on behalf of 21 different clients on June 24, 2019. He certified that he had spent a total of 11.4 hours in court that day, including a half-hour for each of 17 clients. In a similar manner, he certified that he had performed an aggregate of 22.2 hours of work on May 28, 2019, on behalf of 13 different clients, including 6.8 hours in court. The latter figure was derived from McCloskey's billing a standard half-hour of in-court time for 12 of the 13 clients.

{¶ 14} In July 2021, OPD filed a grievance against McCloskey based on his billing practices.

{¶ 15} At his disciplinary hearing, McCloskey was adamant that he performed all of the work that he had billed in his fee applications—and sometimes more. His testimony demonstrated his belief that he had erred in relying on his memory and cryptic file notes to reconstruct his time and allocate his hours among cases and dates. He stated, "I have no doubt that I did the work and put the time in. That's just how I am. But, yes, I did a terrible job of—of making it all on the day I did it."

{¶ 16} McCloskey testified that he does not submit a fee request until the case has concluded. He explained that to determine his billable time, he would record all of his initial intake work as performed on the day he accepted a new case, even though in reality, he probably had done that work over the course of three to five days. McCloskey thus surmised that the dates for which he billed excessive hours corresponded with days on which he took on a number of new clients. His testimony and the stipulations demonstrate that before OPD audited his fee applications, he had no occasion to view the aggregate time he had billed for any given day across multiple cases to determine whether the total was reasonable—or even possible.

{¶ 17} The board found that McCloskey's problems had been exacerbated by his acceptance of a caseload that was beyond his ability to manage. McCloskey

testified that as a young sole practitioner handling court-appointed cases, he had been told to "[n]ever say no" when asked to accept a case so that he did not get a reputation as "a guy who says no." Consequently, he "got very bad at saying no" and billed over 2,000 hours in 2019 and 2020, earning approximately $100,000 a year.

{¶ 18} Relator has not challenged McCloskey's testimony that he performed all of the work for which he had billed. On the contrary, relator stipulated that he "has no reason to believe that, as a whole, [McCloskey] intentionally overbilled Hamilton County/the state of Ohio or that he did not perform the services he claimed to have performed." And the parties further stipulated that the fault of McCloskey's misconduct lies with the fact that his fee applications "did not accurately reflect the days upon which he provided the services described in the applications."

{¶ 19} On December 14, 2022, McCloskey voluntarily refunded $6,430 to Hamilton County, representing a refund of all hours that he had billed in excess of 16 hours in a day between January 2, 2019, and December 19, 2020 (the period audited by OPD). The parties stipulated and McCloskey testified that the refund was not intended as an admission that McCloskey had failed to render services commensurate with the hours that he had billed. Rather, they acknowledged that after considering the totality of McCloskey's billing hours—including the days on which he had billed more than 16 hours and others on which he had billed the 10 to 12 hours (or less) that he typically worked—a refund of hours billed in excess of 16 hours a day constituted a good-faith effort to account for his poor recordkeeping. In addition to refunding those fees, McCloskey refrained from submitting any fee applications for court-appointed cases for which he had failed to contemporaneously record his time that were pending at the time of the grievance.

{¶ 20} McCloskey testified that he viewed the refund as his mea culpa—an effort to make amends for the embarrassment he had brought to the legal profession.

He repeatedly expressed regret for his sloppy bookkeeping and failure to properly attend to the "business side" of his practice. He has admitted that he certified that his fee applications were true even though they contained misrepresentations in that they did not accurately reflect the dates on which he provided the stated services. He explained that in refunding a portion of his fees, he had sought to "rectify that embarrassment, shame, [and] black eye" that he had brought to the profession and to demonstrate that he accepted what he had done.

{¶ 21} After he was served with OPD's grievance, McCloskey purchased a subscription to time-management software and took several continuing-legal-education courses focused on time and office management. He also testified that he had learned to say no when asked to accept more cases than he can handle.

{¶ 22} Based on the parties' stipulations and the evidence presented at the hearing, the board found that McCloskey's conduct violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt that finding of misconduct.

## RECOMMENDED SANCTION

{¶ 23} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 24} In this case, the parties have stipulated and the board has found that the mitigating factors consist of McCloskey's clean disciplinary record; his timely, good-faith effort to rectify the consequences of his misconduct; his cooperative attitude toward the disciplinary proceedings; and letters from three judges, a former judge, and two attorneys attesting to his good character and reputation. *See* Gov.Bar R. V(13)(C)(1), (3), (4), and (5). The parties stipulated that no aggravating factors are present, but the panel found that McCloskey had engaged in a pattern of misconduct. *See* Gov.Bar R. V(13)(B)(3).

**{¶ 25}** This court has held that "[g]enerally, attorney misconduct involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law." *Disciplinary Counsel v. Karris*, 129 Ohio St.3d 499, 2011-Ohio-4243, 954 N.E.2d 118, ¶ 16, citing *Disciplinary Counsel v. Kraemer*, 126 Ohio St.3d 163, 2010-Ohio-3300, 931 N.E.2d 571, ¶ 13, and *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. However, we have recognized that "an abundance of mitigating evidence" may justify a less severe sanction. *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, ¶ 8, citing *Dayton Bar Assn. v. Kinney*, 89 Ohio St.3d 77, 728 N.E.2d 1052 (2000).

**{¶ 26}** With that precedent in mind, the board noted that in almost every case involving overbilling by court-appointed counsel, this court has imposed an actual suspension from the practice of law. *See, e.g.*, *Disciplinary Counsel v. Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361 (imposing a one-year suspension, with six months conditionally stayed, on an attorney who inflated his fees by billing each client for the aggregate time he had spent in court for all his clients on a given day regardless of the time spent on each client's case); *Disciplinary Counsel v. Johnson*, 106 Ohio St.3d 365, 2005-Ohio-5323, 835 N.E.2d 354 (imposing a one-year suspension with six months conditionally stayed for the same misconduct as in *Holland*); *Toledo Bar Assn. v. Stahlbush*, 126 Ohio St.3d 366, 2010-Ohio-3823, 933 N.E.2d 1091 (imposing a two-year suspension, with one year conditionally stayed, on an attorney who engaged in billing offenses similar to those in *Holland* and *Johnson*); *Dayton Bar Assn. v. Swift*, 142 Ohio St.3d 476, 2014-Ohio-4835, 33 N.E.3d 1 (same); *Lorain Cty. Bar Assn. v. Robinson*, 165 Ohio St.3d 270, 2021-Ohio-2123, 178 N.E.3d 471 (imposing a two-year suspension, with one year conditionally stayed, on an attorney who knowingly overbilled for court-appointed work).

{¶ 27} The board noted that the lone exception to this line of cases is this court's 4-to-3 decision in *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368. Like McCloskey, Agopian often represented indigent defendants as court-appointed counsel in criminal cases. Agopian did not maintain contemporaneous records of the time he had spent on each client's case. Instead, he would approximate the date on which he had provided the services and the time he had spent performing them. He often billed the same number of hours to prepare and file motions in multiple cases regardless of the actual time spent. *Id*. at ¶ 5. His fee applications—prepared weeks or months after he performed the work—resulted in claims that he had worked more than 24 hours a day on three different dates. *Id*. at ¶ 6.

{¶ 28} This court found that despite Agopian's careless and sloppy timekeeping, there was no evidence of deceit or an intention to collect fees for work he had not performed. On the contrary, we quoted the hearing panel's finding that Agopian " 'routinely perform[ed] services in an amount far in excess of the time for which he submit[ted] payment requests.' " *Id*. Indeed, we noted one panel member's impression that instead of taking one hour and turning it into three, it appeared that Agopian " 'was taking three hours and turning [them] into one.' " *Id*.

{¶ 29} Based on the mitigating evidence—which consisted of Agopian's clean disciplinary record, his full cooperation in the disciplinary process, his acceptance of responsibility for his misconduct, and more than 40 letters attesting to his good character—this court publicly reprimanded Agopian for his misconduct. *Id*. at ¶ 14-15. Three dissenting justices would have imposed a stayed one-year suspension as recommended by the board. *Id*. at ¶ 16 (Lanzinger, J., joined by Moyer, C.J., and O'Connor, J., dissenting).

{¶ 30} Here, the board acknowledged that McCloskey's misconduct bears a striking similarity to that of Agopian. But it also compared the facts of this case to those of three cases in which we imposed actual suspensions from the practice

of law for comparable misconduct *after* we decided *Agopian*—namely *Stahlbush*, *Swift*, and *Robinson*.

**{¶ 31}** Like McCloskey, Stahlbush failed to maintain adequate records of the hours she had worked for her clients, overbilled for court-appointed work, billed as many as 19 hours a day on multiple dates, and billed more than 24 hours a day on three dates. *See Stahlbush*, 126 Ohio St.3d 366, 2010-Ohio-3823, 933 N.E.2d 1091, at ¶ 2. But Stahlbush also submitted fee requests that deceptively inflated the hours she had worked and, in some cases, merely guessed at the time she had spent on a case, and she regularly submitted bills that exceeded the fee caps for her juvenile cases. *Id*. at ¶ 11, 13. She also double-billed for work she had performed on a capital case, though she later returned the unearned portion of those fees. *Id*. at ¶ 3. Stahlbush eventually admitted that if her billing records were correct, she would have been working an average of almost ten hours a day, 365 days a year. *Id*. at ¶ 12. In addition to finding that her conduct was dishonest, we found that it was prejudicial to the administration of justice, that it adversely reflected on her fitness to practice law, and that she had charged an impermissibly excessive fee. *Id*. at ¶ 2-4. In the presence of three aggravating factors and three mitigating factors, we suspended Stahlbush from the practice of law for two years with one year conditionally stayed. *Id*. at ¶ 7-8, 17.

**{¶ 32}** Swift engaged in similar inappropriate billing practices for court-appointed work for approximately two years in four different counties. *Swift*, 142 Ohio St.3d 476, 2014-Ohio-4835, 33 N.E.3d 1, at ¶ 3, 9. He failed to maintain any independent time records for work performed by himself or other attorneys whom he allegedly supervised and billed between 14 and 30 hours a day on numerous dates. *Id*. at ¶ 14, 9. Moreover, he billed his work in increments of a half-hour instead of one-tenth of an hour as required by standards promulgated by OPD. *Id*. at ¶ 14. Swift stipulated that he owed restitution of $50,000 as a result of his misconduct, though he had not paid it at the time of his disciplinary hearing. *Id*. at

¶ 17, 19. We found that Swift knowingly made false statements of fact or law to a tribunal and to a third person; that he engaged in dishonesty, fraud, deceit, or misrepresentation; and that his conduct was prejudicial to the administration of justice and adversely reflected on his fitness to practice law. *Id*. at ¶ 15, 17. We suspended Swift for two years with one year conditionally stayed. *Id*. at ¶ 23.

{¶ 33} As for *Robinson*, 165 Ohio St.3d 270, 2021-Ohio-2123, 178 N.E.3d 471, the board here found that that case was factually distinguishable from *Stahlbush* and *Swift*—and also this case—inasmuch as Robinson was criminally charged and pleaded guilty to a fifth-degree-felony count of theft after admitting that she had fraudulently overbilled for court-appointed work that she had performed over a four-year period. *See Robinson* at ¶ 5.

{¶ 34} At her disciplinary hearing, Robinson testified that she had experienced a series of serious medical problems at the time of her misconduct and did not have sufficient health insurance to cover the costs of her treatment. *Id*. at ¶ 6. In addition to most of the rule violations found in *Stahlbush*, we found that Robinson made false statements of fact or law to a tribunal and committed an illegal act that adversely reflected on her honesty and trustworthiness. *Robinson* at ¶ 7. However, she fully acknowledged the wrongful nature of her misconduct and was "exceedingly remorseful" for her actions. *Id*. at ¶ 10. Prior to her disciplinary hearing, she had paid over $29,000 in restitution as ordered in her criminal case, and she had agreed to pay an additional $50,000 in restitution in connection with her disciplinary proceeding. *Id*. Based in part on the panel's finding that Robinson was unlikely to reoffend, we suspended her from the practice of law for two years with one year conditionally stayed. *Id.* at ¶ 16, 18.

{¶ 35} Here, the parties jointly recommended that McCloskey receive a fully stayed two-year suspension. The board determined that McCloskey's overbilling was de minimis when compared to that of Swift ($50,000) and Robinson ($79,319). In contrast to *Stahlbush* and *Robinson*, there is no evidence in this case

that McCloskey knowingly inflated his fee applications or that he failed to perform all of the work that he had billed—though he had performed that work in significantly different blocks of time than he had indicated on his fee applications. And unlike Swift, McCloskey routinely made notes of his activities and therefore did not create his fee applications out of whole cloth. He also accepted full responsibility for his misconduct and took immediate steps to rectify the problem by purchasing and using time-management software and by refunding fees that were called into question by the OPD audit.

{¶ 36} Finding that the facts of this case are most comparable to those of *Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, and noting the abundance of mitigating evidence, the board recommends that we suspend McCloskey from the practice of law for one year and stay the entire suspension.

{¶ 37} We do not condone McCloskey's conduct, and we remind all attorneys of the importance of maintaining accurate and contemporaneous records of the time spent and the work performed on behalf of their clients to ensure that their bills are fair and honest. Nevertheless, we agree that the facts of this case are most comparable to those of *Agopian* and that given the weight of more recent authority specifically disapproving the billing practices at issue in this case, a conditionally stayed one-year suspension is the appropriate sanction in this case.

## CONCLUSION

{¶ 38} Accordingly, Hugh Peter McCloskey Jr. is hereby suspended from the practice of law in Ohio for one year, with the entire suspension stayed on the condition that he commit no further misconduct. If McCloskey fails to comply with the condition of the stay, the stay will be revoked and he will be required to serve the full one-year suspension. Costs are taxed to McCloskey.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

12

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

George D. Jonson and Lisa M. Zaring, for respondent.

_____