[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Mollica*, Slip Opinion No. 2025-Ohio-5372.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5372

DISCIPLINARY COUNSEL *v.* MOLLICA.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Mollica*, Slip Opinion No. 2025-Ohio-5372.]

*Attorneys—Misconduct—Misrepresentation in violation of the Rules of Professional Conduct—Conditionally stayed one-year suspension.*

(No. 2025-0792—Submitted July 8, 2025—Decided December 3, 2025.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-034.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Matthew Christopher Mollica, of Cambridge, Ohio, Attorney Registration No. 0097415, was admitted to the practice of law in Ohio in 2018.

{¶ 2} In a November 2024 complaint, relator, disciplinary counsel, alleged that Mollica engaged in dishonesty, fraud, deceit, or misrepresentation by submitting inaccurate fee applications for legal services he provided as court-appointed counsel in Muskingum, Noble, Coshocton, Washington, Perry, Licking, and Guernsey Counties. The parties submitted stipulations of fact and misconduct and aggravating and mitigating factors along with 18 joint exhibits. They also agreed that a fully stayed two-year suspension is the appropriate sanction for Mollica's misconduct.

{¶ 3} The matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Based on the parties' stipulations and Mollica's testimony, the panel found that Mollica committed the charged misconduct and recommended that he be suspended from the practice of law for one year with the suspension stayed in its entirety on the condition of no further misconduct. The board adopted the panel's report and recommendation but would require Mollica to pay the costs of the proceedings as an additional condition of the stay. The parties have jointly waived objections. After a thorough review of the record, we adopt the board's findings of misconduct and its recommended sanction.

## MISCONDUCT

{¶ 4} From June 2018 until December 2021, Mollica worked at Gottlieb, Johnson, Beam & Dal Ponte in Zanesville. In 2021, approximately 90 percent of his legal practice consisted of the court-appointed representation of indigent criminal defendants in Muskingum, Noble, Coshocton, Washington, Perry, Licking, and Guernsey Counties. The parties have stipulated that Mollica worked an estimated 12 to 15 hours a day, typically six or seven days a week.

{¶ 5} During 2021, Mollica used a software program to record his time, though he did not use it effectively. Typically, he entered his time into the program at the end of each day. However, he sometimes waited a day or two and would attempt to recreate the time he had spent working for each client by reviewing records such as the case docket or emails and estimating the time he had spent on a task. He did not precisely maintain contemporaneous records or notes regarding the time spent on his court-appointed cases.

{¶ 6} According to Mollica's disciplinary-hearing testimony, the software program automatically inserted the date that the data was entered into the program unless the user overrode the program by manually entering a different date. Because Mollica was not certain that he had always overridden the program when the default date was inaccurate, the entries he made in the program one or more days after he completed tasks may have been recorded under the wrong date. Mollica did not take any additional steps to make sure that he had correctly entered his time into the program.

{¶ 7} To receive payment for his work as court-appointed counsel, Mollica completed and submitted a standardized fee-application form created by the Ohio Public Defender Commission entitled "Motion, Entry, and Certification for Appointed Counsel Fees." The fee application prompts the entry of the client's name; the assigned case number; the charged offense(s); the judge assigned to the case; the hours spent on the case, both in and out of court; the total fees requested; and the total fees authorized by the judge.

{¶ 8} The first page of the fee-application form requires the attorney to certify that (1) the attorney has received no compensation in connection with providing representation in the case other than that described in the motion or approved by the court upon a previous motion, (2) the fees and expenses set forth in the motion have not been "duplicated on any other motion," and (3) the attorney or an attorney under his or her supervision has performed all legal services itemized

in the motion. Immediately below those certifications are spaces for the attorney to record several dates relevant to the representation and the attorney's name, signature, and attorney-registration number.

{¶ 9} After Mollica entered his time into his firm's software program, the firm's support staff would print reports and manually enter his time into another software program to generate fee applications for his court-appointed work. Although Mollica reviewed and approved the fee applications before signing them and submitting them to the proper court for payment, he did not verify that the time he had entered into the firm's software program had been accurately transferred to his fee applications. Although Mollica certified that the time listed on the fee-application forms had been expended in representation of the identified client, some of his fee applications were false and inaccurate.

{¶ 10} In 2022 and 2023, the Office of the Ohio Public Defender ("OPD") audited appointed-counsel fee applications that it received during 2021. The audit showed that Mollica had submitted certified fee applications seeking payment for 2,785.9 hours of court-appointed work that year. In addition, the audit revealed that Mollica had submitted fee-application forms that together certified he had worked more than 24 hours in a day on ten dates, between 20 and 24 hours in a day on eight dates, and between 16 and 20 hours in a day on 24 dates.

{¶ 11} The audited fee applications also showed that Mollica often billed the same amount of "in court" time for each court appearance regardless of the actual time he had spent on each client's case. The parties stipulated that of the 476 billing entries for "in court" time in his fee applications, 329—or 69.12 percent—were billed as 0.5 hour. At his disciplinary hearing, Mollica acknowledged that he had typically divided the number of hours he appeared in court on a given day by the number of matters for which he appeared in court that day, billing a maximum of 0.5 hour of "in court" time per matter. For example, he testified that if he was in court for three hours on a given day representing three separate clients, he would

bill each client 0.5 hour for "in court" time and 0.5 hour for the time he was present at the courthouse but not "on the record."

{¶ 12} Relator's investigation did not uncover any evidence proving that Mollica intentionally inflated the time billed for his legal services. Mollica explained that he was relatively inexperienced and overworked—especially through the summer of 2021. He testified that in the spring or summer of 2021, he and his paralegal determined that he had over 106 open criminal cases. He also noted that while attending a training program for trial lawyers in September 2021, he spoke with an attorney who worked in a public defender's office in another state who stated that his office had strict limits on how many cases its attorneys could handle at one time. Following that conversation, Mollica decided to "cut [his] practice back significantly" and began removing himself from court-appointed lists. Mollica left the Gottlieb firm at the end of 2021 and was limiting his court-appointed cases to approximately 30 percent of his practice by 2023.

{¶ 13} Mollica agreed to make restitution to each of the counties affected by his improper billing practices. Following the approach used to calculate restitution in *Disciplinary Counsel v. McCloskey*, 2023-Ohio-3447, Mollica agreed to make restitution for all time billed over 16 hours a day from January 1, 2021, through December 31, 2021—185.4 hours in all, multiplied by his average hourly rate of $55 for a total of $10,197. On April 30, 2025, Mollica mailed reimbursement checks to the counties' auditors based on the percentage of his fee applications he had submitted in each county: $3,161.07 to Muskingum County, $407.88 to Washington County, $815.76 to Perry County, $713.79 to Licking County, and $5,098.50 to Guernsey County.[1] The parties stipulated that Mollica's

---

1. According to the parties' stipulations, Mollica submitted just one fee application in Noble County and two fee applications in Coshocton County. Because the fee applications Mollica submitted in 2021 in each of those counties represented less than 1 percent of the total fee applications he submitted, no restitution was paid to those counties.

reimbursement did not constitute an admission of intentional overbilling but, rather, an acknowledgement that he was not accurately tracking and billing his time.

{¶ 14} Based on the parties' stipulations and Mollica's testimony, the board found by clear and convincing evidence that he engaged in misrepresentation in violation of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Although Mollica testified that his misconduct was not intentional, he admitted that he had "messed up on the billing" and he accepted full responsibility for his misconduct. We adopt the board's finding that Mollica engaged in misrepresentation in violation of Prof.Cond.R. 8.4(c).

**RECOMMENDED SANCTION**

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} In this case, the parties have stipulated and the board has found that just one aggravating factor is present—a pattern of misconduct. *See* Gov.Bar R. V(13)(B)(3). In contrast, four mitigating factors are present: Mollica has a clean disciplinary record, made a timely, good-faith effort to make restitution or rectify the consequences of his misconduct, made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, and submitted letters from a judge, a magistrate, 36 attorneys, and a layperson attesting to his good character and reputation. *See* Gov.Bar R. V(13)(C)(1) and (3) through (5).

{¶ 17} This court has held that "[g]enerally, misconduct involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law." *Disciplinary Counsel v. Karris*, 2011-Ohio-4243, ¶ 16, citing *Disciplinary Counsel v. Kraemer*, 2010-Ohio-3300, ¶ 13, and *Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261, syllabus. However, we have recognized that "an

6

abundance of mitigating evidence" may justify a less severe sanction. *Disciplinary Counsel v. Markijohn*, 2003-Ohio-4129, ¶ 8, citing *Dayton Bar Assn. v. Kinney*, 2000-Ohio-445. For example, we imposed a less severe sanction in cases involving such significant mitigation as an unblemished record, *see Columbus Bar Assn. v. Villarreal*, 2024-Ohio-5165, ¶ 33-35, and a strong demonstration of good character or reputation through the submission of letters, *see Disciplinary Counsel v. Agopian*, 2006-Ohio-6510, ¶ 14 (40 character letters); *Disciplinary Counsel v. Miller*, 2024-Ohio-4939, ¶ 24 (nine character letters specifically "attest[ing] to . . . the effect that [the attorney's alcohol-use] disorder had had on his judgment and actions").

**{¶ 18}** Here, an abundance of mitigating evidence is present. The board found the mitigating evidence in this case—namely, Mollica's timely and voluntary payment of restitution, the change in his practice habits, his profound remorse, and his persuasive character evidence (demonstrated by 39 letters from the community)—to be very compelling. We agree. Therefore, an actual suspension is not warranted.

**{¶ 19}** The parties have jointly suggested that the appropriate sanction in this case is a conditionally stayed two-year suspension. The board noted, however, that in *McCloskey*, 2023-Ohio-3447, we imposed a conditionally stayed one-year suspension on another attorney who overbilled OPD for appointed-counsel work. McCloskey did not utilize a time-management system or create contemporaneous records of the time he had spent on any given case. Therefore, when he prepared his fee applications, he would review the docket and the rough notes that he had made on his client files to recreate the time he had spent on each case. As a result, the dates and hours he had recorded on his fee applications and had certified as "accurate" were often grossly inaccurate.

**{¶ 20}** In early 2021, OPD conducted an audit of fee applications submitted by several Hamilton County attorneys who were receiving a large amount of fees

for court-appointed work. Similar to the audit in this case, the Hamilton County audit showed that McCloskey had submitted fee-application forms that together certified he had worked more than 24 hours in a day on three dates, between 20 and 24 hours in a day on 13 dates, and between 16 and 20 hours in a day on 22 dates. The aggravating and mitigating factors in *McClosky* were identical to those here, though just six character letters were submitted on McCloskey's behalf—compared to the 39 character letters submitted in this case. *See id.* at ¶ 24.

{¶ 21} In this case, the parties and the board noted that Mollica billed over 24 hours on ten days whereas McCloskey's billing exceeded 24 hours on just three days. However, the board found that Mollica was far less experienced than McCloskey, having practiced for around three years at the time of his misconduct, while McCloskey had nearly 20 years of experience. And while McCloskey's practice was limited to a single county, Mollica was handling appointed cases in seven different counties.

{¶ 22} In addition to considering *McCloskey*, the board noted that in *Agopian*, 2006-Ohio-6510, we publicly reprimanded an attorney who on three occasions billed in excess of 24 hours a day in court-appointed cases. The board also considered three other cases in which we suspended attorneys for two years with one year conditionally stayed based on their inaccurate fee billing in court-appointed cases. *See Lorain Cty. Bar Assn. v. Robinson*, 2021-Ohio-2123, ¶ 5-6, 10 (attorney knowingly overbilled for her work, pleaded guilty to a fifth-degree-felony count of theft arising from that misconduct, was ordered to make restitution of nearly $30,000 in her criminal case, and agreed to pay an additional $50,000 in restitution); *Toledo Bar Assn. v. Stahlbush*, 2010-Ohio-3823, ¶ 2-3, 11 (attorney failed to keep adequate records of the hours she had worked, submitted fee requests that deceptively inflated the hours she had worked, and in some instances merely guessed at the time she had spent on a case, resulting in her billing more than 3,450 hours in a year); *Dayton Bar Assn. v. Swift*, 2014-Ohio-4835, ¶ 14-15, 17 (attorney

routinely billed for his work in increments of a half hour instead of one-tenth of an hour as required, knowingly submitted false billing statements over two years, failed to maintain independent time records for himself or the other attorneys he had allegedly supervised, and agreed that restitution in the amount of $50,000 was warranted). The board, however, determined that those cases were distinguishable from the facts of this case in that they involved a felony conviction and/or far more excessive billing.

**{¶ 23}** Comparing the facts of this case to *McCloskey*, *Agopian*, *Stahlbush*, and *Swift*, the board concluded that the appropriate sanction for Mollica's misconduct is a one-year suspension stayed in its entirety on the conditions that he commit no further misconduct and pay the costs of these proceedings.

**{¶ 24}** Having independently reviewed the record and our precedent, we find that the facts of this case are most comparable to those in *McCloskey*. In light of the facts and compelling mitigating evidence here, we agree that a one-year suspension stayed in its entirety on the conditions recommended by the board is the appropriate sanction in this case.

## CONCLUSION

**{¶ 25}** Accordingly, Matthew Christopher Mollica is hereby suspended from the practice of law in Ohio for one year with the entire suspension stayed on the conditions that he commit no further misconduct and pay the costs of these proceedings. If Mollica fails to comply with a condition of the stay, the stay will be revoked and he will be required to serve the full one-year suspension. Costs are taxed to Mollica.

Judgment accordingly.

———————————

Joseph M. Caligiuri, Disciplinary Counsel, and Benjamin B. Nelson, Assistant Disciplinary Counsel, for relator.

Montgomery Jonson, L.L.P., and George D. Jonson, for respondent.

_____