[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Collins*, Slip Opinion No. 2025-Ohio-5393.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5393

DISCIPLINARY COUNSEL *v.* COLLINS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Collins*, Slip Opinion No. 2025-Ohio-5393.]

*Attorneys—Misconduct—Misrepresentation in violation of the Rules of Professional Conduct—Conditionally stayed two-year suspension.*

(No. 2025-0793—Submitted July 8, 2025—Decided December 4, 2025.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-026.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ.  FISCHER, J., concurred in judgment only. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Cedric Preston Collins, of Reynoldsburg, Ohio, Attorney Registration No. 0088995, was admitted to the practice of law in Ohio in 2012.

{¶ 2} In an October 2024 complaint, relator, disciplinary counsel, alleged that Collins engaged in dishonesty, fraud, deceit, or misrepresentation by submitting inaccurate fee applications for legal services he had provided as court-appointed counsel in Franklin, Licking, and Fairfield Counties. The parties submitted stipulations of fact and misconduct and aggravating and mitigating factors along with 166 joint exhibits. They also agreed that a fully stayed two-year suspension is the appropriate sanction for Collins's misconduct.

{¶ 3} The matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Based on the parties' stipulations and the evidence presented, including Collins's testimony, the panel found that he committed the charged misconduct and recommended that he be suspended from the practice of law for two years with the suspension conditionally stayed in its entirety. The board adopted the panel's report and recommendation, and the parties have jointly waived objections. We adopt the board's findings of misconduct and recommended sanction.

## FACTS AND MISCONDUCT

{¶ 4} Before Collins opened his private practice, he worked for the Ohio Department of Youth Services for about 11 years. He first started accepting court-appointed work in October 2018. In 2021 and 2022, approximately 90 percent of his practice consisted of defending indigent juveniles against delinquency and contempt charges and serving as a guardian ad litem in abuse, neglect, and dependency cases. He provided those services in Franklin, Licking, and Fairfield Counties. The parties have stipulated that Collins worked an estimated 12 to 15 hours a day Monday through Friday as well as one or two hours on weekends. At

all times relevant to this case, he was compensated at the rate of $50 to $75 an hour, depending on the county involved and whether his time was spent in or out of court.

**{¶ 5}** During 2021 and 2022, Collins utilized office-management software that included both time-management and calendaring features. He did not, however, utilize the time-management feature of the software to maintain contemporaneous records or notes of the time he had spent working on his court-appointed cases, nor did he carefully track the daily total of the work he had performed in Franklin, Licking, and Fairfield Counties. Collins also failed to track the work performed by other attorneys who occasionally covered court-appointed cases for him in those counties.

**{¶ 6}** To receive payment for his work as court-appointed counsel, Collins was required to complete and submit a standardized fee-application form created by the Ohio Public Defender Commission entitled "Motion, Entry, and Certification for Appointed Counsel Fees." The form prompts the entry of the client's name; the assigned case number; the charged offense(s); the judge assigned to the case; the hours spent on the case, both in and out of court; the total fees requested; and the total fees authorized by the judge.

**{¶ 7}** The first page of the fee-application form requires the attorney to certify that (1) the attorney has received no compensation in connection with providing representation in the case other than that described in the motion or approved by the court upon a previous motion, (2) the fees and expenses set forth in the motion have not been "duplicated on any other motion," and (3) the attorney or an attorney under his or her supervision has performed all legal services itemized in the motion. Immediately below those certifications are spaces for the attorney to record several dates relevant to the representation as well as the attorney's name, signature, and attorney-registration number. The second page of the form states, "I hereby certify that the following time was expended in representation of the defendant/party represented," above spaces for the attorney to list the dates of

service and the hours that the attorney spent working on the case, both in and out of court.

{¶ 8} For billing purposes, because he did not maintain contemporaneous records of the time he spent working on each of his cases in 2021 and 2022, Collins reviewed the docket, pleadings, and hearing notices along with his emails, telephone records, and text messages to estimate the time he had spent on a particular matter. He combined that time with the time he estimated that other court-appointed attorneys had spent covering matters for him in all three counties. This practice led Collins to file numerous incorrect and/or undocumented—but certified—fee-application forms in each of the three counties in which he practiced.

{¶ 9} An audit conducted in 2022 and 2023 by the Office of the Ohio Public Defender ("OPD") revealed that Collins submitted certified fee applications seeking payment for 3,392.5 hours of court-appointed work in 2021. It also revealed that Collins had submitted fee applications that together certified he had worked more than 24 hours in a day on three dates, between 20 and 24 hours in a day on 14 dates, and between 16 and 20 hours in a day on 45 dates. Collins's fee applications also showed that on numerous occasions, he billed the same amount of "in court" time for each client, regardless of the actual time he had spent in court on behalf of the client. Specifically, his 2021 fee applications contained 216 entries for "in court time," of which 148—or 68.5 percent—were for 0.5 hour.

{¶ 10} In September 2023, OPD filed a grievance with relator against Collins. In response to relator's initial letter of inquiry, Collins acknowledged that "recording inaccuracies unfortunately occurred" and he attributed those inaccuracies to his untimely review of his case records.

{¶ 11} While relator's investigation was pending, counsel for OPD informed the attorney representing Collins in this disciplinary proceeding that an audit for 2022 revealed that Collins had certified fee applications requesting payment for 3,342.9 hours for that year. Together, those fee applications certified

that Collins had worked more than 24 hours in a day on one date, between 20 and 24 hours in a day on 20 dates, and between 16 and 20 hours in a day on 65 dates. As in the first audit, the 2022 fee applications showed that on numerous occasions, Collins billed the same amount of "in court" time for each client regardless of the actual time he had spent on the client's case.

{¶ 12} Although the facts related to the second audit were not alleged in the formal complaint filed against Collins, he knowingly and voluntarily waived his right under Gov.Bar R. V(10)(A)(1) to written notice of those facts. He also stipulated to those facts in this case. Collins further stipulated that in 2022, he submitted fee applications containing 383 entries for "in court" time, of which 280—73.1 percent—were for 0.5 hour.

{¶ 13} In the parties' stipulations and again before the hearing panel, relator acknowledged that he had no reason to believe that Collins or the attorneys who assisted him did not perform the services Collins claimed they had performed or that Collins had intentionally overbilled for those services. Collins explained that three factors contributed to his submission of inaccurate fee applications: (1) a COVID-19-related docket backlog caused him to be inordinately busy with client matters, leading to the shortcomings in his recordkeeping and invoicing, (2) his failure to effectively utilize the time-management feature of his office-management software, and (3) his failure to otherwise track the total hours he had worked and the hours worked by other attorneys who had appeared in court on his behalf.

{¶ 14} In late 2023, after learning of the first OPD audit, Collins began utilizing the time-management feature of his office-management software, and he has continued to accurately record the total number of hours he and the other attorneys who occasionally cover for him have actually worked on his court-appointed cases.

{¶ 15} In March 2025, Collins voluntarily reimbursed the three counties in which he had performed court-appointed services a total of $19,695.50,

representing the fees he had collected for the time he had billed in excess of 16 hours a day as determined through the OPD audits. *See Disciplinary Counsel v. McCloskey*, 2023-Ohio-3447, ¶ 19, 24, 35 (accepting the parties' stipulation and the board's finding that an attorney's refund of hours billed in excess of 16 hours a day constituted a good-faith effort to account for his poor recordkeeping). Based on the approximate percentage of the court-appointed cases he had handled in each of those counties, Collins distributed those funds as follows: $8,661 to Franklin County, $7,950.50 to Licking County, and $3,075 to Fairfield County. The parties stipulated that those reimbursements did not constitute an admission that the fees were unearned but, rather, an acknowledgement that Collins had failed to accurately track and bill his time.

{¶ 16} After an independent review of the documentation received from OPD, relator calculated that the appropriate amount of restitution Collins owed was $25,925. The parties stipulated that the difference between OPD's and relator's totals was primarily caused by inadvertent data-entry errors discovered when relator reviewed the actual billing sheets as well as the overlap of several dates that appeared in both the 2021 and 2022 audits. In recognition of the time that it would take to review relator's calculations (in what we note is a voluminous record) and the parties' stipulation that Collins's reimbursement does not constitute an admission that the fees were unearned, the parties agreed to split the difference between OPD's and relator's totals. The parties therefore stipulated that Collins would be required to make an additional reimbursement of $3,114.75, to be distributed as follows: 45 percent to Franklin County, 40 percent to Licking County, and 15 percent to Fairfield County. On June 3, 2025, the parties filed with the board a joint notice of additional reimbursement demonstrating that Collins had made the additional stipulated restitution payments.

{¶ 17} During Collins's disciplinary hearing, relator asserted that Collins had been honest throughout relator's investigation. In addition, relator argued that

Collins's misconduct constituted misrepresentation because it had arisen from recordkeeping errors rather than intentional overbilling. Although the board stated that "[Collins's] conduct can only be described as misrepresentation, dishonest, deceitful, and/or fraudulent," it noted that it had "no reason to believe [Collins] intentionally overbilled the hours that he or the other attorneys who covered for [him] spent on court appointed cases" or "did not perform the services they claimed were performed."

{¶ 18} Based on the evidence presented, including the parties' stipulations and exhibits and Collins's testimony, the board found by clear and convincing evidence that Collins violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt the board's finding of misconduct and conclude that Collins engaged in misrepresentation rather than intentional dishonesty, deceitfulness, or fraudulent misconduct.

## RECOMMENDED SANCTION

{¶ 19} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 20} In this case, the parties have stipulated and the board found that just one aggravating factor is present—a pattern of misconduct. *See* Gov.Bar R. V(13)(B)(3). In contrast, four mitigating factors are present: Collins has a clean disciplinary record, made a timely, good-faith effort to make restitution or rectify the consequences of his misconduct, made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, and submitted letters from three attorneys and one judge attesting to his good character and reputation. *See* Gov.Bar R. V(13)(C)(1) and (3) through (5).

{¶ 21} This court has held that "[g]enerally, misconduct involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law." *Disciplinary Counsel v. Karris*, 2011-Ohio-4243, ¶ 16, citing *Disciplinary Counsel v. Kraemer*, 2010-Ohio-3300, ¶ 13, and *Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261, syllabus. However, we have recognized that "an abundance of mitigating evidence" may justify a less severe sanction. *Disciplinary Counsel v. Markijohn*, 2003-Ohio-4129, ¶ 8, citing *Dayton Bar Assn. v. Kinney*, 2000-Ohio-445.

{¶ 22} The parties jointly suggested that the appropriate sanction in this case is a conditionally stayed two-year suspension. The board considered five cases cited by the parties in support of that sanction: *Disciplinary Counsel v. Agopian*, 2006-Ohio-6510; *McCloskey*, 2023-Ohio-3447; *Lorain Cty. Bar Assn. v. Robinson*, 2021-Ohio-2123; *Toledo Bar Assn. v. Stahlbush*, 2010-Ohio-3823; and *Dayton Bar Assn. v. Swift*, 2014-Ohio-4835.

{¶ 23} In *Agopian*, an attorney overbilled a county for court-appointed work due to careless and sloppy timekeeping practices. He submitted fee requests for work performed in excess of 24 hours a day on just three dates. There was no evidence that Agopian engaged in deceit or attempted to collect fees for work he had not performed. Rather, the evidence demonstrated that he actually had "'routinely perform[ed] services in an amount far in excess of the time for which he submit[ted] payment requests.'" *Agopian* at ¶ 6, quoting the panel's report. In the absence of any aggravating factors and the presence of significant mitigating factors—including a clean disciplinary record, Agopian's full cooperation in the disciplinary process, his acceptance of responsibility for his misconduct, and more than 40 letters attesting to his good character, integrity, reputation, and professionalism—we publicly reprimanded Agopian for his misconduct. *See id.* at ¶ 14-15. When compared to Agopian's misconduct, Collins's is more significant.

{¶ 24} In *McCloskey*, we imposed a conditionally stayed one-year suspension on an attorney who, like Collins, submitted grossly inaccurate fee applications for cases in which he had served as court-appointed counsel. An OPD audit showed that McCloskey had submitted fee applications that together certified he had worked more than 24 hours in a day on three dates, between 20 and 24 hours in a day on 13 dates, and between 16 and 20 hours in a day on 22 dates. Like Collins, McCloskey did not utilize a time-management system or create and maintain any contemporaneous records of the time he had spent on a given case. Instead, he attempted to re-create the time he had spent on each case by reviewing the case docket and the rough notes he had recorded on his case files regarding the tasks he had completed on behalf of his clients. And like Collins, McCloskey certified on multiple occasions that he had spent the same amount of time in court on behalf of several clients, regardless of the amount of time that he had actually spent in court on the respective client's case.

{¶ 25} No aggravating factors were found in *McCloskey*, 2023-Ohio-3447, at ¶ 24, though there was a pattern of misconduct spanning two years. Although the mitigating factors in *McCloskey* were identical to those here, *see id.*, McCloskey made restitution of just $6,430, representing all the hours that he had billed in excess of 16 hours in a day over nearly two years, *id.* at ¶ 19. Using the same formula to calculate restitution, Collins has paid $22,810.25—more than three and a half times the amount paid by McCloskey. But the pervasiveness of Collins's misconduct warrants a more severe sanction than the conditionally stayed one-year suspension we imposed in *McCloskey*, *see id.* at ¶ 38.

{¶ 26} In the three remaining cases, we imposed an even more severe sanction—a two-year suspension with one year conditionally stayed—for acts of misconduct involving the submission of inaccurate fee applications for court-appointed work. *See Robinson*, 2021-Ohio-2123, at ¶ 18; *Stahlbush*, 2010-Ohio-

3823, at ¶ 17; *Swift*, 2014-Ohio-4835, at ¶ 23. But in each of those cases, there was an element of knowledge or intent that is simply not present here.

{¶ 27} In *Robinson*, an attorney knowingly overbilled for court-appointed work while she was experiencing severe medical problems and lacked sufficient health insurance to cover the costs of her treatment. Robinson pleaded guilty to a fifth-degree-felony count of theft arising from her misconduct, was ordered to make nearly $30,000 in restitution in her criminal case, and agreed to pay an additional $50,000 during her disciplinary proceeding.

{¶ 28} Similarly, in *Stahlbush*, an attorney failed to keep adequate records of the hours she had worked in court-appointed cases, submitted fee requests that deceptively inflated the hours she had worked, and merely guessed in some instances at the time she had spent on a case. Stahlbush billed more than 3,450 hours in a year for her court-appointed services and stipulated that a portion of that billing was false and fraudulent. Aggravating factors consisted of Stahlbush's selfish or dishonest motive, a pattern of misconduct, and multiple offenses. *Stahlbush* at ¶ 7. As for mitigating factors, she had a clean disciplinary record, presented evidence of her good character and reputation, made restitution for her double-billing in one case, and agreed to forgo payment of an additional $12,000 in pending legal fees. *Id*. at ¶ 8. We suspended Stahlbush for two years and stayed the second year on the conditions that she serve one year of monitored probation and commit no further misconduct. *Id.* at ¶ 17.

{¶ 29} Lastly, in *Swift*, 2014-Ohio-4835, an attorney knowingly submitted false fee applications to a tribunal and to OPD, routinely billed his work as a court-appointed attorney in increments of a half hour rather than one-tenth of an hour as required by standards promulgated by OPD, and guessed in the absence of time records at the amount of time he had spent working on hundreds of cases. In addition to finding that he violated Prof.Cond.R. 8.4(c) as Collins has here, we found that Swift made false statements of fact or law to a tribunal and to OPD,

engaged in conduct that was prejudicial to the administration of justice, and engaged in conduct that adversely reflected on his fitness to practice law. *See id*. at ¶ 15, 17. Although Swift stipulated that he owed a total of $50,000 in restitution as a result of his misconduct, in contrast to Collins, Swift had not paid restitution at the time of his disciplinary hearing. *See id*. at ¶ 17, 19-20. We suspended Swift for two years with the second year stayed on conditions, including a period of monitored probation, and required him to make full restitution before seeking reinstatement to the profession. *Id*. at ¶ 23.

{¶ 30} Based on the foregoing, we find that Collins's misconduct, while significant and unbecoming of an officer of the court, does not rise to the level of the misconduct at issue in *Robinson*, *Stahlbush*, and *Swift*. In light of the significant mitigating factors in this case—including Collins's cooperation in the disciplinary proceedings and his timely, good-faith efforts to make restitution and to correct his deficient billing practices—we conclude that the conditionally stayed two-year suspension recommended by the board is the appropriate sanction in this case.

## CONCLUSION

{¶ 31} Accordingly, Cedric Preston Collins is hereby suspended from the practice of law in Ohio for two years with the entire suspension stayed on the condition that he commit no further misconduct. If Collins fails to comply with the condition of the stay, the stay will be revoked and he will be required to serve the full two-year suspension. Costs are taxed to Collins.

Judgment accordingly.

—————————

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

UB Greensfelder, L.L.P., and Alvin E. Mathews, for respondent.

—————————